# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **3:20-CR-30082-RAL** |
| **Plaintiff,** | |
| **vs.** | **REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS** |
| **DAWN EAGLE FEATHER FLOYD,** | |
| **Defendant.** | |

In this conspiracy and possession with intent to distribute a controlled substance case, Dawn Eagle Feather Floyd moves to suppress the written complaint she made against officers of the Rosebud Sioux Tribal Law Enforcement Services (RSTLES), and disseminated to the RSTLES chief administrator, tribal prosecutor, and possibly others. Because Eagle Feather Floyd's complaint was not obtained in violation of her rights, and no other legal basis exists to suppress it, the complaint is admissible for all purposes at trial.

## BACKGROUND

In early December 2019, tribal officers arrested Eagle Feather Floyd on drug charges and took her to the Rosebud Adult Correctional Facility (RACF).[1] She spent more than four months in tribal custody before she was able to post bond.[2] Shortly after her release, Eagle Feather Floyd balked at how RSTLES and Valentine, Nebraska officers investigated her.[3] She alleged that RSTLES Special Agent Benjamin Estes – her former boyfriend – planted, or used his position of power to direct others to plant, drugs in her house and vehicle.[4]

While in custody, Eagle Feather Floyd penned a 41-page complaint describing her previous encounters (romantic and otherwise) with Special Agent Estes, allegations of misconduct by other officers relating to her case, abuse she suffered at the RACF, details about a trip to Colorado to purchase drugs, and admissions of earlier drug use.[5] Believing that the copious background particulars (and incriminating statements) she provided would help in disciplining Estes, Eagle Feather Floyd hand-delivered a copy of the complaint to RSTLES Chief Administrator Steve DeNoyer soon after her release from

---

[1] Docket Nos. 125 at 5-6, 10-12; 133 at 2-3.

[2] Docket Nos. 125 at 13-16; 133 at 3; 177-1 at 28.

[3] Docket Nos. 125; 177-1.

[4] Docket Nos. 125 at 10-12; 177-1 at 6-7, 11-12, 14, 22, 31.

[5] *See* Mot. Hr'g Ex. 1 (June 6, 2023); *see also* Docket No. 125 at 12, 17.

tribal custody.[6]  When she gave DeNoyer the complaint, Eagle Feather Floyd mentioned that she also submitted copies to the tribal court, her attorney, and the Bureau of Indian Affairs (BIA) oversight office for RSTLES.[7]  DeNoyer read the complaint and forwarded it on to the FBI case agent and the "District 1" BIA office in Aberdeen.[8]  About a week later, Eagle Feather Floyd returned to DeNoyer's office to follow up, but he did not think the accusations had any merit (that the officers involved did anything wrong).[9]

By some means not entirely clear,[10] Denita Whipple, the Chief Clerk for the Rosebud Sioux Tribal Court, received a copy of the complaint and a second version with 11 more pages that Eagle Feather Floyd wrote about conduct at the RACF.[11]  Whipple filed both of them on May 1, 2020.[12]  Although she does not recall transmitting anything

---

[6] *See id.* at 14, 16-18; Mot. Hr'g Tr. 20-21, 24 (June 6, 2023).

[7] *See id.* at 24 ("she stated that she gave it to everybody.  She gave it to the court; she gave it to her attorney; she sent it to District 1"); *id.* at 32; *see also* Docket No. 177-1 at 29-30 (based on his statements to her, Eagle Feather Floyd expected DeNoyer would submit the complaint to BIA Internal Affairs).

[8] Mot. Hr'g Tr. 24, 30; *see also* Docket No. 125-7 (screenshot of email with subject "Rosebud internal investigation" Eagle Feather Floyd sent to BIA).

[9] Mot. Hr'g Tr. 31.

[10] *See id.* at 24, 32, 57-58.

[11] Mot. Hr'g Exs. 1, 2 (Docket Nos. 197, 201).

[12] *Id.*

to Whipple,[13] Eagle Feather Floyd knew that the complaint became part of her tribal court file, and directed Whipple to forward the second or longer (52 page) one to the Kelsey Clark, the tribal prosecutor.[14]

On August 11, 2020, a federal grand jury indicted Eagle Feather Floyd for conspiracy to distribute a controlled substance.[15]  The grand jury superseded the original indictment on May 18, 2023, adding a count of possession with intent to distribute a controlled substance.[16]  As part of discovery, the government disclosed and turned over to Eagle Feather Floyd the first, and shorter, complaint (of 41 pages).[17]  Representing herself, Eagle Feather Floyd moved to suppress the complaint (and now after learning of the second one, presumably both complaints), which she calls "Item 41" (a reference taken from the discovery log).[18]  The Court held an evidentiary hearing on the

---

[13] Mot. Hr'g Tr. 57-58.

[14] *See* Mot. Hr'g Ex. 2 at 3 (email from Whipple to Clark, stating, "Good afternoon[.] She [Eagle Feather Floyd] wanted me to email this to you.").

[15] Docket No. 1.

[16] Docket No. 176.

[17] Docket No. 133 at 3, n. 4.

[18] Docket No. 122; *see also* Docket No. 177 (reaffirming her motion to suppress under general constitutional grounds and moving to dismiss the indictment based on outrageous government conduct).

suppression motion, heard testimony from three witnesses, and received 3 exhibits into evidence.[19]

## DISCUSSION

Eagle Feather Floyd maintains that her written complaint should have been kept confidential, and that the government should not be allowed to use it against her in this criminal case.[20]   She points generally to the Fourth, Fifth, Sixth, and Fourteenth Amendments as grounds for suppressing the complaint.[21]   Eagle Feather Floyd also claims that the complaint should be excluded because disclosure of it violates federal and state law.[22]   The Court will address her contentions in turn.

### A.  Fourth Amendment

Eagle Feather Floyd asserts that disclosure and use of the complaint ("Item 41") contravenes her Fourth Amendment rights.[23]   The Fourth Amendment "proscrib[es] unreasonable searches that intrude upon a person's reasonable expectation of privacy."[24]

---

[19] *See* Mot. Hr'g Tr. 2; Mot. Hr'g Exs. 1-3 (Docket Nos. 197, 201-02).

[20] Docket Nos. 122, 125, 177, 177-1.

[21] Docket Nos. 125 at 18, 20-21; 177.

[22] Docket No. 125 at 16-20; *see also* Mot. Hr'g Tr. 87 (acknowledging that 18 U.S.C. § 242, cited in Eagle Feather Floyd's memorandum in support of her motion, did not apply).

[23] *See* Docket No. 125 at 18; Mot. Hr'g Tr. 77.

[24] *Azam v. City of Columbia Heights*, 865 F.3d 980, 989 (8th Cir. 2017); *see generally Graham v. Connor*, 490 U.S. 386, 387 (1989).

Generally, it prohibits law enforcement "intrusions which are not justified in the circumstances, or which are made in an improper manner."[25]

On purely her own accord, Eagle Feather Floyd wrote and then admitted to providing the complaint to law-enforcement affiliated government employees.[26] She hand-delivered the complaint to DeNoyer in his office after her release from tribal custody.[27] At that time, Eagle Feather Floyd told DeNoyer she provided it to "everybody" including the court, her attorney, and "District 1."[28] Later on, she directed Whipple to send a filed copy of the complaint to Clark – the very prosecutor assigned to her criminal case.[29]

Law enforcement took *no* action to bring the complaint into its possession. Eagle Feather Floyd debased any claim of law enforcement intrusion when she provided the complaint to DeNoyer and then again when she directed Whipple to forward it to Clark.

---

[25] *Maryland v. King*, 569 U.S. 435, 435 (2013) (quoting *Schmerber v. California*, 384 U.S. 757, 768 (1966)).

[26] Docket No. 125 at 12-13 (admitting to writing the complaint, and stating she was "never interviewed by an agent; Tribal or Federal, . . . [and] had no desire to speak with law enforcement other than to question Special Agent Estes as to his actions"); 14-15 (admitting to "mindfully" submitting "Item 41" to Steve DeNoyer); *see also id.* at 15 (reflecting that Eagle Feather Floyd emailed a complaint to the BIA on July 19, 2020).

[27] Mot. Hr'g Tr. 20-24.

[28] *Id.* at 24, 32.

[29] *Id.* at 56-58; Mot. Hr'g Ex. 2 at 3.

Eagle Feather Floyd had gave up any reasonable expectation of privacy she had in the contents of the complaint when she gave it to DeNoyer. And whether or not Eagle Feather Floyd truly sent the same complaint to the BIA, Whipple, Clark, or anyone else is of no consequence given Eagle Feather Floyd's known, admitted, voluntary disclosure of it. Since law enforcement took no action to procure the complaint from Eagle Feather Floyd, no Fourth Amendment analysis applies, and the complaint is not subject to suppression under the Fourth Amendment.

### B. Fifth Amendment & *Miranda*

Eagle Feather Floyd further suggests that law enforcement obtained her complaint in violation of her rights under the Fifth Amendment and *Miranda*.[30] The Fifth Amendment provides that no person can be compelled to engage in self-incrimination on a criminal matter.[31] *Miranda* requires that law enforcement advise a suspect, who is in custody and subject to interrogation, of her right to remain silent and to an attorney.[32] For *Miranda* to apply though, there must be custodial interrogation.[33]

---

[30] Docket No. 125 at 19; Mot. Hr'g Tr. 74-75.

[31] U.S. Const. amend. V.

[32] *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966).

[33] *United States v. Tapia-Rodriguez*, 968 F.3d 891, 894 (8th Cir. 2020) (quoting *Miranda*, 384 U.S. at 444) ("Under *Miranda*, a defendant's statements are inadmissible if they were the product of 'custodial interrogation' and he was not properly advised of his right to be free from compulsory self-incrimination and to the assistance of counsel"); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation omitted)

7

As mentioned, Eagle Feather Floyd herself wrote the complaint and personally delivered it to DeNoyer.[34]  She then directed Whipple to send it to Clark.[35]  Eagle Feather Floyd was not in custody or interrogated when the complaint came into law enforcement's hands.[36]  And she submitted the complaint voluntarily – if not emphatically – to DeNoyer and told Whipple to forward it to Clark.  No one requested, much less threatened or coerced, Eagle Feather Floyd to do so.  The Fifth Amendment and *Miranda* thus provide her with no legal fulcrum for exclusion of the complaint.[37]

## C. Sixth Amendment

The Sixth Amendment likewise does not protect Eagle Feather Floyd's complaint. "The initiation of judicial criminal proceedings . . . marks the commencement of the

---

(a suspect is in custody upon a showing of "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest"); *United States v. Hines*, 62 F.4th 1087, 1094 (8th Cir. 2023) (quoting *Tapia-Rodriguez*, 968 F.3d at 894) ("'Interrogation' is defined as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response'").

[34] *See supra* nn. 26, 27.

[35] *See* Mot. Hr'g Tr. 56-58; Mot. Hr'g Ex. 2 at 3.

[36] Mot. Hr'g Tr. 21-22.

[37] *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (*Miranda* warnings required only "where a suspect in custody is subjected to interrogation"); *United States v. Harris*, 64 F.4th 999, 1002 (8th Cir. 2023) (citations omitted) (a spontaneous statement – one made "during a conversation not initiated by the officer" is "admissible with or without the giving of *Miranda* warnings"); *Tapia-Rodriquez*, 968 F.3d at 894.

'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."[38]   Eagle Feather Floyd had not yet been federally charged, nor had a federal warrant issued for her arrest, when she prepared and passed on the complaint.[39] What's more, the government did nothing to "deliberately elicit" the writing and circulation of the complaint.[40]   The Sixth Amendment is of no help in Eagle Feather Floyd's quest to bar the use of her complaint.

### D. Fourteenth Amendment, ICRA, and other claims

Eagle Feather Floyd makes various other legal claims in her briefing, noting them outright or parenthetically, that provide recourse inapplicable to her motion.[41]  She lists the Fourteenth Amendment among the amendments breached, but that Amendment incorporates the Bill of Rights on the states and does not bind the federal government (and would be redundant if it did).[42]   Similarly, 25 U.S.C. § 1302[43] requires tribal

---

[38] *Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (citations omitted).

[39] Mot. Hr'g Tr. 74.

[40] *See Fellers v. United States*, 540 U.S. 519, 523 (2004) (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)) ("We have held that an accused is denied 'the basic protections' of the Sixth Amendment "when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel").

[41] *See* Docket Nos. 125, 177.

[42] *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

[43] *See* Docket No. 122 at 1.

governments to uphold some sections of the Bill of Rights and is not dispositive here.[44]

The South Dakota state statutes Eagle Feather Floyd cites[45] have no bearing in her federal

criminal case.  And the sections of the United States Code[46] and Code of Federal

Regulations[47] she references do not apply to a federal criminal investigation or to her

suppression motion.

---

[44] *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 61 (1978).

[45] *See, e.g.,* Docket Nos. 122, 125 (citing S.D. Codified Laws § 22-12A-16 (falsification of trial evidence felony); § 22-4A-1 (penalties for soliciting a crime); § 22-12-10 (arrest without due process misdemeanor); § 20-8-1 (obligation to restore improperly obtained thing)).

[46] *See, e.g.,* Docket No. 125 (citing 18 U.S.C. § 2422 (enticing or coercing interstate travel for sexual activity felony); 18 U.S.C. § 1519 (destroying or falsifying evidence in federal case felony)); Docket No. 177-1 (citing 21 U.S.C. § 846 (applying penalties to drug control and enforcement statutes); 21 U.S.C. § 841(a)(1) (prohibiting controlled substance manufacturing, distribution, dispensing, or possession); 21 U.S.C. § 841 (b)(1)(B) (same prohibition concerning heroin); 18 U.S.C. § 2261 (domestic violence penalty levels); 18 U.S.C. § 242 (prohibiting deprivation of civil rights under color of law); 18 U.S.C. § 282 (repealed statute); 18 U.S.C. § 241 (prohibiting conspiracy to prevent or hinder another's constitutional or legal rights); 18 U.S.C. § 1152 (general laws of United States apply in Indian Country); 18 U.S.C. § 1153 (criminal jurisdiction over offenses committed in Indian Country); 42 U.S.C. § 1985 (prohibiting conspiracy to interfere with another's civil rights); 18 U.S.C. § 373 (prohibiting solicitation to commit crime of violence)).

[47] *See, e.g.,* Docket No. 125 (citing 22 C.F.R. § 505.12 (civil remedies and criminal penalties in certain foreign relations misdeeds); 32 C.F.R. § 2102.51 (penalties for violating Privacy Act by National Security Council employees)); Docket No. 177-1   (citing 25 C.F.R. § 11.440(b) (default tribal law and order code section prohibiting evidence tampering)).

## CONCLUSION

The written complaint Eagle Feather Floyd seeks to suppress is one that she penned, hand-delivered to the RSTLES chief administrator, and then requested be sent on to the tribal prosecutor.  She prepared it on her own, voluntarily, without any threats, promises, or demands being made.  And she put it in the law enforcement channel for others to have and read.  No law prohibits the government from using the complaint, as substantive and impeachment evidence, at trial.

## RECOMMENDATION

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is

RECOMMENDED that Eagle Feather Floyd's Motion to Suppress[48] be denied.

---

[48] Docket Nos. 122, 177.

11

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to object to the same.[49]  Unless an extension of time for cause is later obtained,[50] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[51] Objections must "identify[] those issues on which further review is desired[.]"[52]

DATED this 16th day of June, 2023.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[49] *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).

[50] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[51] *See Thompson*, 897 F.2d at 357; *Nash*, 781 F.2d at 667.

[52] *Arn*, 474 U.S. at 155.