UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:20-CR-30082-RAL |
|---|---|
| Plaintiff, | |
| | OPINION AND ORDER REGARDING LATE-FILED MOTIONS TO SUPPRESS |
| vs. | |
| DAWN EAGLE FEATHER FLOYD, | |
| Defendant. | |

## I.   Procedural History Relevant to Pending Motions

Defendant Dawn Eagle Feather Floyd faces charges for conspiracy to distribute 50 grams or more of methamphetamine between January 1, 2019, and January 1, 2020, and possession with intent to distribute 50 grams or more of methamphetamine on December 9, 2019. Doc. 176. A grand jury first indicted Eagle Feather Floyd on August 11, 2020. Doc. 1. Soon after, this Court issued its first Scheduling and Case Management Order, which set a deadline for suppression motions of October 6, 2020. Doc. 14.

Eagle Feather Floyd for most of the pendency of this case was released on conditions pending trial. She has been chronically and repeatedly discontented with Criminal Justice Act (CJA) attorneys appointed to represent her; all seven of her CJA panel attorneys have withdrawn after Eagle Feather Floyd clashed with them or wanted different counsel. As a result, the case has been continued an astounding fifteen times. Within each amended scheduling and case management order, this Court enlarged the deadline for suppression motions. See Docs. 18, 20,

1

24, 30, 58, 79, 90, 95, 99, 110, 118, 131, 208, 293, 303. In 2023, Eagle Feather Floyd was allowed to, at her request, proceed pro se with stand-by counsel, with a trial date set for August 28, 2023. Doc. 208. After she failed to appear for the jury trial, a warrant issued for her arrest, Docs. 263, 264; she ended up and remained in custody, Doc. 280; a seventh CJA panel attorney Paul Andrews was appointed as her attorney, Docs. 283, 284; and this Court entered yet another Order Granting Continuance and Scheduling Order, Doc. 293, reopening the deadline for suppression motions to January 23, 2024, and setting the jury trial to begin on March 5, 2024.

Eagle Feather Floyd became dissatisfied with Andrews and wanted another continuance, prompting hearings on February 21, 2024, whereby this Court granted Eagle Feather Floyd's request to represent herself and return to pro se status, designated Andrews as stand-by counsel in this case, and at the entreating of Eagle Feather Floyd granted a short continuance of the March 5 trial start date to March 25, 2024, notifying all that there would be no further continuances of this nearly four-year-old criminal case. Docs. 300, 301, 303, 304. Beseeched by Eagle Feather Floyd, this Court included in the Order Granting Continuance and Scheduling Order, Doc. 303, a March 1, 2024 deadline for suppression motions, as one of Eagle Feather Floyd's gripes against Andrews was that he had not filed a motion to suppress that she wanted raised.

Despite the enlarged deadline for suppression motions being March 1 and Eagle Feather Floyd indicating that she had a motion ready, Eagle Feather Floyd's newly filed motions to suppress were filed on March 5 by standby counsel Andrews, Doc. 305, and March 7, 2024, via mail by Floyd pro se, Doc. 307. Andrews, who previously had advised this Court that he was moving offices at the end of February and beginning of March, takes the blame for not getting Eagle Feather Floyd's motion typed up and filed by March 1. Eagle Feather Floyd's pro se version of the motion is identical to what Andrews filed but is handwritten and attaches many pages of

2

material instead of referring to material previously filed as Andrews did. See Docs. 305, 307, 307-1, 307-2.

This Court's practice to automatically enlarge the deadline to file suppression/voluntariness motions with each continuance, and to do so in Eagle Feather Floyd's case repeatedly, is likely ill-advised and should be discontinued. After all, it is unfair to the United States to allow Eagle Feather Floyd to raise now a motion to suppress that she could not have raised if she had appeared for her jury trial. But correcting this Court's ill-advised practice of re-opening the time for a motion to suppress with every continuance is an issue for another day and a practice to discontinue on a going-forward basis. The United States, understandably and adamantly, argues that the latest motions to suppress should be denied as untimely, noting that Eagle Feather Floyd literally has had years to file such motions and did not timely do so, and only now untimely files such motions. Doc. 308.

This Court set the deadline to file suppression motions as March 1, 2024, so the motions to suppress were late. Eagle Feather Floyd, who is in custody at the Lawrence County Jail, informed the Clerk of Court's Office either on February 29, 2024, or March 1, 2024, that she wanted to file a motion with this Court but lacked access to a computer or fax machine. The Clerk of Court's Office told her that she could mail the motion.

As stated above, on March 5, 2024, Andrews as standby counsel electronically filed a typed version of Pro Se Defendant's (Revised) Motion to Suppress 12.8.2019 "Search Warrant," and Eagle Feather Floyd filed the same handwritten document on March 7, 2024 in an envelope postmarked March 5, 2024. Docs. 305, 307. Eagle Feather Floyd in the motion argues that the tribal search warrant obtained to search a home in Sicangu Village on the Rosebud Indian Reservation violated various rules of federal criminal procedure, including "Title II Rule 3; The

Complaint, Rule 41(d)(2)(A)(B)(C): Obtaining A Search Warrant and Rule 41(e)(2)(A)(ii) Issuing the Warrant Under Obtaining a Search Warrant." Doc. 305, 307. Eagle Feather Floyd also argues that the warrant lacks probable cause and contains "insufficient reliable content" and "improper information." Docs. 305, 307. Unlike with the previous motion to suppress on the same topic filed in 2023, a copy of the Tribal Search Warrant was also attached. See Doc. 305-1.

The filing and denial of previous motions to suppress deserve mention, particularly because the current pending motions to suppress duplicate a prior one denied as being untimely. Eagle Feather Floyd had filed a motion to suppress on a different issue and motion to dismiss, with the suppression motion addressing a 41-page document that Eagle Feather Floyd had written and furnished to the Rosebud Sioux Tribe Law Enforcement Services (RSTLES) Chief Administrator that contained certain inculpatory statements. Docs. 122, 177. This Court issued an Opinion and Order Denying Motions to Suppress and to Dismiss, Doc. 215, and adopted the report and recommendation to deny those motions of Magistrate Judge Mark A. Moreno, Doc. 205, after Eagle Feather Floyd failed to file timely objections to the report and recommendation.

The current motions to suppress are effectively the same as Eagle Feather Floyd's "Motion to Quash 12.08.2019 Search Warrant," filed on July 19, 2023, pro se, at a time when the deadline to file motions to suppress was July 17, 2023. Docs. 208, 209. In that prior motion, as she does in her current ones, Eagle Feather Floyd argued that the December 8, 2019, search warrant should be suppressed because it was obtained in violation of Federal Rule of Criminal Procedure 41(d), that the warrant lacks an "indica" of probable cause, that the warrant contains insufficient reliable content and improper information, and that the warrant is defective because the tribal judge abandoned his role as a neutral and detached actor. Doc. 229. The United States filed a short

4

response opposing Defendant's motion to quash as being untimely filed. Doc. 233. Eagle Feather Floyd submitted a long memorandum, Doc. 235, akin to what she has done with the new motions.

Judge Moreno issued a Report and Recommendation recommending the Motion to Quash be denied, Doc. 236. Eagle Feather Floyd did not object to the Report and Recommendation, so this Court reviewed the Report and Recommendation under a clear error standard of review, determined that the motion to quash was untimely, and observed that as no valid argument for good cause to excuse its untimely nature existed. Doc. 253. This Court also noted that it was not able to review the merits of the motion because a copy of the tribal search warrant being challenged was not provided with the motion to quash. Id.

## II.    Timeliness of Recent Motions to Suppress

The initial question here is whether to deny Eagle Feather Floyd's motions filed on March 5 and 7, 2024, as untimely, or whether she should be able to present a motion previously found to be untimely a mere 20 days before the start of trial of a case that has been pending for over three years. Federal Rule of Criminal Procedure 12(c) grants district courts the authority to set deadlines for pretrial motions. Fed. R. Crim. P. 12(c)(1) ("The Court may . . . set a deadline for the parties to make pretrial motions . . . . If the Court does not set one, the deadline is the start of trial."). The Court may also "extend or reset the deadline for pretrial motions" any time before trial. Fed. R. Crim. P. 12(c)(2). "If a party does not meet the [court imposed] deadline for making a [pretrial] motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3). A party's failure to file a pretrial motion by the court-imposed deadline constitutes a waiver of the issue. United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011) (citation omitted). Yet "a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3); Trancheff, 633

F.3d at 697 ("[T]he district court has discretion to excuse the waiver."). A district "court's refusal to consider an untimely pretrial motion" is reviewed for abuse of discretion. Id. at 697–98.

When a defendant files a motion to suppress evidence that raises the same issue that the defendant attempted to argue in an earlier motion that the court determined to be untimely, the later motion may be denied as "an untimely effort to preserve issues that could have been raised in a timely motion to suppress." United States v. White, No. 20-03041-05, 2023 U.S. Dist. LEXIS 65720, at *3 (W.D. Mo. March 10, 2023) (quoting Trancheff, 633 F.3d at 698). And the "desire to suppress incriminating evidence and the retention of new counsel are not by themselves sufficient to establish good cause to justify relief from a waiver" caused by untimely filing. Trancheff, 633 F.3d at 698; United States v. Dabney, 42 F.4th 984, 989 (8th Cir. 2022) (stating that "appointment of new counsel is not good cause for filing an untimely motion"). In Dabney, the United States Court of Appeals for the Eighth Circuit upheld a denial of a defendant's second suppression motion because it was untimely filed despite the defendant receiving a seven-month continuance because the defendant could not "explain why he needed so much time for a routine suppression motion." Dabney, 42 F.4th at 989.

Here, Eagle Feather Floyd had knowledge of the facts underlying the issues she wanted to raise in her motion to suppress since May 2023 at the absolute latest. See Doc. 177. Even then, she waited until July 19, 2023, to file a motion to suppress the warrant. See Doc. 229. Cf. United States v. Salgado-Campos, 442 F.3d 684, 686 (8th Cir. 2006) (acknowledging that an untimely motion may be excused when "the delay was the result of the government's failure to disclose information pertinent to the motion until after the pretrial motion deadline had expired"). In August of 2023, this Court concluded that the motion was untimely filed, and Eagle Feather Floyd did not show good cause to excuse its untimely nature. Doc. 253. Furthermore, Eagle Feather

Floyd has had the assistance of seven different attorneys in this case to assist her in preparing and filing motions in a timely manner, although she contends that all of them have been deficient. This Court has extended or reset the deadline to file suppression motions numerous times (15 by its count) over the pendency of this case; these extensions were given to afford newly appointed counsel, or Eagle Feather Floyd when she elected to proceed pro se, the opportunity to file motions on novel issues not yet addressed by this Court. Such extensions are not meant to give defendants the opportunity to relitigate and preserve issues previously waived through untimely filings. See Dabney, 42 F.4th at 989; Trancheff, 633 F.3d at 697–98.

Even if this Court were to look at the current motion to suppress in isolation, ignoring the identical issue raised in her previous untimely motion, Eagle Feather Floyd bears the burden to show that the motion was timely filed either by standby counsel or under the prison mailbox rule. Under the prison mailbox rule, a pro se defendant's filings are deemed "filed" at the time they are delivered to prison staff for mailing to the Clerk of Court's office. See Grady v. United States, 269 F.3d 913, 916 (8th Cir. 2001) (recognizing that the prison mailbox rule has "been applied to pro se prisoner filings outside the appellate sphere"); see also Mortensbak v. Butler, 102 F. Supp. 3d 1085, 1090 n.6 (D.S.D. 2015). To take advantage of the prison mailbox rule, defendants must demonstrate timeliness by filing an affidavit or notarized statement "setting [out] the date of deposit and stating that first-class postage [is being pre]paid," Grady, 269 F.3d at 917 (quoting Fed. R. App. P. 4(c)(1)(A)(i)), or "evidence (such as a postmark or date stamp) showing that the [filing] was so deposited and that postage was prepaid," Fed. R. App. P. 4(c)(1)(A)(ii). See also Fed. R. App. P. 25(a)(2)(A)(iii).

Here, Eagle Feather Floyd has not shown by affidavit or notarized statement that she deposited her motion with prison authorities along with prepaid first-class postage by this Court's

7

March 1 filing deadline. Without making such a showing, a defendant cannot prove timely filing under the prison mailbox rule. Andrews blamed himself as the cause for the delay, but this does not excuse Defendant's untimeliness, especially considering that she had previously blown a deadline to file the same motion and then failed to timely object to a report and recommendation for denial of the motion. Docs. 208, 229, 253; see Trancheff, 633 F.3d at 698 (upholding denial of pretrial motion as untimely when previous counsel could have timely filed pretrial motions and defendant contributed to delay by absconding from the district). Thus, this Court has grounds to deny the late-filed motions to suppress on the ground of untimeliness.

However, this Court is loath to penalize a pro se defendant for a delay for what is effectively two business days (from Friday, March 1 to Tuesday, March 5) caused by standby counsel Andrews moving offices. If it were not the case that the current motions to suppress raise an identical issue to a prior motion to suppress denied as untimely, this Court would entertain the motions to suppress notwithstanding their untimeliness; this Court plans to proceed in a similar way here so that, if there is an appeal, the United States Court of Appeals for the Eighth Circuit has a robust record on which to rule. However, given the close proximity to trial this Court's ruling aims to afford the United States time and some flexibility to present to this Court the testimony of the key witness prior to opening statements.

### III. Merits of Motions to Suppress

Turning to the merits of the motions to suppress, there already is much in the record by way of admissions from Eagle Feather Floyd in pro se filings about the circumstances surrounding her vehicle search on December 9, 2019, outside a residence at Sicangu Village. Although she challenges now a warrant issued to search an adjacent home and its curtilage, the evidence against her was seized from her car.

8

Eagle Feather Floyd in her Memorandum, Doc. 125, filed on January 23, 2023, writes that she drove Renae Pacheco to Denver where they used drugs and obtained and transported back to South Dakota methamphetamine, marijuana, and drug paraphernalia. Doc. 125 at 3–4. After arriving back to the Rosebud Indian Reservation in South Dakota, Eagle Feather Floyd drove to a home in Sicangu Village where Renae Pacheco was staying temporarily and which Eagle Feather Floyd denies ever having visited before. Id. at 4–5. Unbeknownst to Eagle Feather Floyd, RSTLES officers had obtained a search warrant for the Sicangu Village home and while Eagle Feather Floyd was parked on the property arrived to execute that search warrant.[1] When police arrived, Eagle Feather Floyd and Renae Pacheco were sitting in Eagle Feather Floyd's car. From Eagle Feather Floyd's perspective, the search warrant for the home was all a ruse, she was the target of the warrant, then-RSTLES Special Agent Ben Estes—with whom she had a relationship in the past—collaborated with Renae Pacheco to set her up, and all of this is terribly unfair to her. Doc. 125; Doc. 235; Doc. 307-1 and -2.

In previous filings and at the recent hearing, the United States clarified that on December 8, 2019, Rosebud Sioux Tribe Law Enforcement Services received information from Bonita Pacheco that Renae Pacheco had two pounds of methamphetamine and agreed to sell Bonita two 8-balls for $100 each—a steep discount from the $250 market value in the area at the time. Doc. 133 at 2. RSTLES Special Agent Estes sought and obtained a tribal search warrant for the Sicangu Village residence where Renae was staying. Id. As officers arrived at the residence to execute the warrant, they saw at a distance Renae get into a car that had arrived and parked in the driveaway of Renae's residence. Id. RSTLES Officer Joshua Marti arrived at the car and observed marijuana

---

[1] Any reference to search warrant refers the December 8, 2019 Tribal Search Warrant. See Doc. 305-1.

9

in the car, so officers had both women step out to search the automobile, discovering baggies, marijuana, pills, pipes, a scale, and 40 grams of methamphetamine. Id.

After receiving Miranda warnings, Eagle Feather Floyd signed a consent to search form authorizing law enforcement to search her home. Doc. 133 at 2–3. According to the United States, during the search of Eagle Feather Floyd's home, officers found about 85 grams of methamphetamine, a scale, baggies, pipes, and other drug paraphernalia. Id.

The United States does not intend to introduce at trial the affidavit or search warrant for the Sicangu Village home, but intends only to mention the existence of a search warrant in testimony to explain why RSTLES officers went to the Sicangu Village home and encountered Eagle Feather Floyd in her car, thereafter seeing marijuana in the car and searching it. Ironically, though seeking to challenge and suppress the search warrant, Eagle Feather Floyd is the party that wants to build a case off of what she calls a "Falsified Search Warrant," stemming from Special Agent Estes's alleged acts to conspire against her to "manufacture[] jurisdiction, instigating and creating a crime." Doc. 177-1 at 7. Eagle Feather Floyd then attacks the validity of the search warrant based on the time frame in which it was obtained and the tribal judge who issued the warrant. Eagle Feather Floyd asserts that "the Judge failed to question whether the warrant requests was [sic] made in 'Bad Faith' as is evident by this Court's ruling in United States v. Rodriguez, 8th Cir. Dist. Court, D. South Dakota 2020."[2] Id. at 8. Eagle Feather Floyd disputes

---

[2] The correct citation is United States v. Rodriquez, No. 20-CR-30016, 2020 WL 6111638 (D.S.D. Oct. 15, 2020). In that case, this Court concluded that the same tribal judge involved in the issuance of the warrant for the Sicangu Village home acted as a mere rubber stamp for tribal law enforcement and declined to find that the good faith exception of United States v. Leon, 468 U.S. 897, 922 (1984) applied. In Rodriquez, the United States had conceded that the tribal judge erred in determining that there was probable cause for the warrant to issue. 2020 WL 6111638, at *3–4. In Rodriquez, there was no evidence tying methamphetamine found in a vehicle driven by the defendant's juvenile sister to the defendant's home. Id. at 2. Unlike in Rodriquez, here the officer who completed the affidavit averred that he had spoken with Bonita Pacheco who

that law enforcement observed marijuana in the car because she claims the searching officer later made a statement along the lines that the marijuana "must have fell to the bottom of the purse." Doc. 235 at 13. However, at a hearing held by this Court on the motion on March 15, 2024, Eagle Feather Floyd said that Renae Pacheco told officers upon getting out of Eagle Feather Floyd's vehicle that there was marijuana in the vehicle. Similarly in her prior memorandum, Eagle Feather Floyd acknowledged that Renae gave officers "probable cause" when she told officers that Eagle Feather Floyd had marijuana in the car. Doc. 235 at 13.

At the March 15, 2024 hearing, the question arose about whether Eagle Feather Floyd has "standing" to challenge the search warrant for the home in Sicangu Village. The Supreme Court of the United States abandoned a standing analysis, per se, in its Fourth Amendment jurisprudence. See Rakas v. Illinois, 439 U.S. 128, 139 (1978). Yet a person challenging a search still must show that "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Id. at 140. In short, "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Id. at 143; Minnesota v. Carter, 525 U.S. 83, 88 (1998); see Rawlings v. Kentucky, 448 U.S. 98, 105–06 (1980) (holding defendant could not challenge seizure of his drugs from another's purse because defendant had no legitimate expectation of privacy in the purse).

---

provided information that Renae Pacheco was staying and babysitting at the subject residence in Sicangu Village, had just returned from Denver with "Wanita (Last Name Unknown)" with two pounds of methamphetamine and eight ounces of marijuana, had offered to sell Bonita two 8-balls of methamphetamine at a discount price, and had children in her care in the home while apparently selling methamphetamine out of the home. Doc. 305-1 at 5–6. This is not a situation where the search warrant affidavit is so scant that the police would lack an objectively reasonable basis to believe the search warrant was valid; the Leon good-faith exception would apply here to justify the police going to the Sicangu Village residence to execute the search warrant.

Here, Eagle Feather Floyd has no expectation of privacy in or concerning the home where Renae Pacheco was staying and babysitting; indeed Eagle Feather Floyd has maintained that she never had been inside the home except for when one RSTLES officer escorted her there to stay warm while her vehicle was being searched. Eagle Feather Floyd, however, has an expectation of privacy to her vehicle.

Generally, the Fourth Amendment requires the issuance of a warrant founded on probable cause before a lawful search or seizure can occur. U.S. Const. amend. IV; United States v. Blaylock, 535 F.3d 922, 926 (8th Cir. 2008) (citing Maryland v. Dyson, 527 U.S. 465, 466 (1999)). The Supreme Court, however, recognizes certain exceptions to the Fourth Amendment's warrant requirement, one such exception being an officer's search of an automobile based on probable cause. Blaylock, 535 F.3d at 926 (citing Carroll v. United States, 267 U.S. 132, 153 (1925)). Since this exception's origination in Carroll, the Supreme Court has identified multiple justifications underlying the exception, including the impracticability of obtaining a warrant for a vehicle that can be moved quickly outside the jurisdiction, "the pervasive regulation of vehicles," and the reduced expectation of privacy one has in their car based on "the relative openness of [its] passenger compartment." Id. (citations omitted).

"A police officer has probable cause to conduct a search when the facts available to him [or her] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." Florida v. Harris, 568 U.S. 237, 243 (2013) (cleaned up and citations omitted). Probable cause cannot be reduced to a "precise definition or quantification." Id. (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)). All probable cause requires is a "fair probability on which reasonable and prudent people, not legal technicians, act." Id. at 244 (cleaned up and citation omitted). In determining whether the "practical and common-sensical standard" of probable cause

is met, courts look to the totality of the circumstances. Id. (citations omitted). When probable cause exists, it "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." United States v. Bettis, 946 F.3d 1024, 1029 (8th Cir. 2020) (citation omitted).

Under the plain view doctrine, observing contraband or evidence of a crime in a vehicle can "give[] rise to probable cause to perform a warrantless search of a vehicle." See United States v. West, 280 Fed. App'x 563, 566 (8th Cir. 2008) (citations omitted) (observing that probably cause can rest on "simply observing the presence of containers that are known to typically contain illegal narcotics"); see also Texas v. Brown, 460 U.S. 730, 742–43 (1983) (determining that an "officer's observation of a balloon tied in a manner consistent with trafficking illegal narcotics provided probable cause under the plain view doctrine"). For the plain view doctrine to apply, officers must be "lawfully in a position from which to view [the] object," the object's "incriminating character [must be] immediately apparent," and "the officers [must] have a lawful right of access to the object." United States v. Gillon, 348 F.3d 755, 759 (8th Cir. 2003) (upholding seizure of drugs from passenger compartment of car during a traffic stop because officers had "a right of access to the passenger compartment of the car" after they had "viewed what appeared to be" drugs).

"[U]nder the Fourth Amendment, the question is not whether the officers were trespassing, but whether [the Defendant] had a reasonable expectation of privacy." United States v. Lakoskey, 462 F.3d 965, 973 (8th Cir. 2006). An officer does not violate the Fourth Amendment by approaching a lawfully stopped car and looking in from the outside. United States v. Vinson, 805 F.3d 1150, 1152 (8th Cir. 2015). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." California v. Ciraolo, 476

U.S. 207, 213 (1986) (citation omitted). RSTLES officers had legal justification to approach Eagle Feather Floyd's vehicle where Renae Pacheco, the subject of the investigation and target of the search warrant was located. Eagle Feather Floyd disputes that a RSTLES officer, presumably then Officer Joshua Marti, actually observed marijuana in the vehicle, though she says that Renae Pacheco said upon getting out of the vehicle that there was marijuana inside of it. Doc. 235 at 13. Either way, probable cause then existed for the subsequent search of the vehicle regardless of the existence of a warrant.

Nevertheless, because this Court has not actually heard from Officer Marti, this Court will reserve any ruling on the merits until hearing Officer Marti testify about whether he in fact saw marijuana or heard an occupant say that there was marijuana in the vehicle. If that is his testimony or the testimony of any other officer on site and if that testimony is credible, the vehicle search and subsequent seizure of drugs was justified and there was no tainted fruit of any poisonous tree to suppress. See United States v. Hessman, 369 F.3d 1016, 1023–24 (8th Cir. 2004).

### IV. Conclusion

For the reasons explained, it is

ORDERED that the motions to suppress, Docs. 305 and 307, are not timely filed and subject to be denied as a result, but that this Court will consider nonetheless whether the automobile exception to warrantless search justified the search of Eagle Feather Floyd's vehicle outside of the Sicangu Village home. It is further

ORDERED that this Court wants to hear from Joshua Marti (or whatever other officer ostensibly saw marijuana within Eagle Feather Floyd's car prior to the search or heard her passenger say that there was marijuana in the car) prior to the time the parties give opening statements so that this Court can rule on the merits of the motion. In the discretion of the Assistant

U.S. Attorney that hearing can occur on Tuesday, March 19 in Pierre, or on the morning before the trial begins on Monday, March 26, or after the time the jury is selected and excused for the day.

DATED this 18th day of March, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE