UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAWN EAGLE FEATHER FLOYD,<br><br>Defendant. | 3:20-CR-30082-RAL<br><br>OPINION AND ORDER ON MOTION IN LIMINE |

I.       **Background**

A Superseding Indictment, Doc. 176, charges Defendant Dawn Eagle Feather Floyd with one count of Conspiracy to Distribute a Controlled Substance and one count of Possession with Intent to Distribute a Controlled Substance.  Eagle Feather Floyd has pleaded not guilty to these charges, and the parties are proceeding to trial.  This Court held a pretrial conference and motion hearing on March 26, 2024, at which it heard argument and ruled on the United States' Motion in Limine, Doc. 260.  The Defendant had no objection to any part of the United States' motion.  This Court now formalizes its rulings with this Opinion and Order.

II.      **Legal Standard**

Rulings on motions in limine are by their nature preliminary.  <u>United States v. Spotted Horse</u>, 916 F.3d 686, 693 (8th Cir. 2019).  They "developed pursuant to the district court's inherent authority to manage the course of trials," <u>Luce v. United States</u>, 469 U.S. 38, 41 n.4 (1984), and are "specifically designed to streamline the presentation of evidence and avoid unnecessary

1

mistrials," <u>Spotted Horse</u>, 916 F.3d at 693.  This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction. <u>Motion in limine</u>, Black's Law Dictionary (11th ed. 2019).  Rulings on motions in limine necessarily occur before the nature and relevance of the evidence can be placed in full context. <u>See</u> <u>Spotted Horse</u>, 916 F.3d at 693.  Therefore, a district court has broad discretion when ruling on motions in limine and retains the authority to revisit and change its rulings based on how the case unfolds.  <u>Luce</u>, 469 U.S. at 41–42.  If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain from this Court a contrary ruling.

**III.    Discussion**

**A.  United States' Motion in Limine**

The United States' Motion in Limine has nine subparts and seeks (1) to exclude hearsay statements of the Defendant offered by the Defendant, (2) to exclude references to penalty and punishment, (3) to exclude any reference to the charges as felonies and to exclude any mention of the adverse collateral consequences that may stem from felony charges or a felony conviction, (4) to exclude opining on the guilt or innocence of the Defendant, (5) to exclude references to matters required to be raised by pretrial motion under Fed. R. Crim. P. 12(b)(3), (6) the admission of statements of co-conspirators, (7) to sequester witnesses from the courtroom, (8) to exclude any reference to certain matters relating to former Rosebud Sioux Tribe Officer and former BIA Agent Ben Estes, and (9) to exclude any reference to certain matters relating to Rosebud Sioux Tribe Officer Josh Marti.  The Court addresses each subpart in turn below.

### 1. Hearsay Statements of Defendant Offered by Defendant

In subpart one, the United States seeks to prevent Defendant from admitting into evidence self-serving out-of-court statements that she may have made to police officers, friends, relatives, or anyone else. The United States argues that such self-serving statements are hearsay and inadmissible under Rule 801 of the Federal Rules of Evidence. Unless an exception otherwise applies, a defendant's out-of-court statements, if offered by the defendant to prove the truth of the matter asserted, are inadmissible as hearsay. Fed. R. Evid. 801(c)–(d); see United States v. Waters, 194 F.3d 926, 931 (8th Cir. 1999) (holding that defendant could not admit his own out-of-court statements to FBI agent because they were inadmissible hearsay); United States v. White Horse, 177 F. Supp. 2d 973, 977 (D.S.D. 2001) (reasoning that defendant's statements to a doctor were inadmissible hearsay because they were offered by the defendant and were not offered under the exception for statements made for the purpose of diagnosis or treatment). Accordingly, any out-of-court statement made and offered by Defendant to prove the truth of the matter asserted will be inadmissible unless Defendant can show that the statement is admissible under an exception to the rule against hearsay. Defendant's out-of-court statements that are admissions against material interest are admissible, Fed. R. Evid. 801(d)(2), and Defendant may seek to introduce under the rule of completeness Defendant's other statements that accompanied the admissions against interest. Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection."). But see United States v. Roberts, 86 F.4th 1183, 1188 (8th Cir. 2023) ("Rule 106 'does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay

3

does not come within a defined hearsay exception.'" (quoting United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004)).

### 2. Reference to Penalty or Punishment

Under subpart two, the United States moves to preclude Defendant, standby counsel, and any witness from referring to the possible penalty or punishment Defendant will face if convicted of the crimes charged. The United States argues that permitting the jury to hear information about what penalty or punishment Defendant faces would be improper and would only confuse the jury. This Court agrees.

"It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994) (cleaned up and citation omitted). The jury's role "is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." Id. "[P]roviding jurors sentencing information invites them to ponder matters . . . not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. (citation omitted). The jury must be able to carry out its role uninfluenced by the consequence of its verdict. See id. at 578 (citation omitted); United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost never instructed concerning the consequences of verdicts.").

Accordingly, this Court grants the United States' Motion in Limine as to subpart two. There shall be no reference to or comment on the possible penalty or punishment Defendant could receive if convicted. This does not, however, preclude Defendant from referring to the charges as "serious" or "felony" offenses.

### 3.  Reference to Adverse Effects

For similar reasons, the United States seeks to prohibit any reference to or mention of Defendant's charges being felony offenses or that a conviction for such offenses can have adverse collateral effects on Defendant's future, such as career plans, educational opportunities, and the loss of certain constitutional rights.   As addressed above, "[i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task." Shannon, 512 U.S. at 579.  A jury's task is to hear evidence, find facts, and determine guilt based on those facts. Id.  The collateral consequences stemming from a felony charge or conviction are irrelevant as to Defendant's guilt and has no role in the jury's decision-making process; given that it has no function in the jury's task, any probative value it may have had is substantially outweighed by the risk of confusing the issues and misleading the jury. See id.; Fed. R. Evid. 403.  Therefore, this Court grants the United States' Motion in Limine as to subpart three to the extent that no reference shall be made about the adverse collateral effects a felony conviction may have on Defendant's future, but this Court will allow Defendant to refer to the charges as "serious" or "felony" offenses.

### 4.  Opining on Guilt or Innocence

Under subpart four, the United States requests an order barring Defendant, standby counsel, and any witness from expressing their opinion about the guilt or innocence of Defendant.  Evidence expressing an opinion on a defendant's innocence or guilt "invades the province of the jury" and is inadmissible. See United States v. Thirion, 813 F.2d 146, 156 (8th Cir. 1987) (reasoning that a government witness's opinion that defendant was innocent "is not truly exculpatory evidence because it is inadmissible as it invades the province of the jury"); Wesson v. United States, 164 F.2d 50, 55 (8th Cir. 1947) ("And any such unnecessary opinion evidence in a criminal case that will inescapably be a plain expression of the witness' opinion of the defendant's guilt . . . should

5

be scrupulously avoided."). Therefore, neither Defendant, standby counsel, nor any witness may opine on the guilt or innocence of Defendant. This, of course, does not preclude Defendant or standby counsel from arguing whether the evidence presented at trial does or does not establish guilt beyond a reasonable doubt, nor does it preclude Defendant from testifying or arguing that she is actually innocent of the offenses charged.

### 5. Reference to Matters that Must be Raised by Pretrial Motion

Next, the United States seeks to prohibit Defendant from referencing matters that should have been brought before this Court by pretrial motion under Fed. R. Crim. P. 12(b)(3). In relevant part, Rule 12(b)(3) provides that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
> **(A)** a defect in instituting the prosecution, including:
>   **(i)** improper venue;
>   **(ii)** preindictment delay;
>   **(iii)** a violation of the constitutional right to a speedy trial;
>   **(iv)** selective or vindictive prosecution; and
>   **(v)** an error in the grand-jury proceeding or preliminary hearing;
> **(B)** a defect in the indictment or information, including:
>   **(i)** joining two or more offenses in the same count (duplicity);
>   **(ii)** charging the same offense in more than one count (multiplicity);
>   **(iii)** lack of specificity;
>   **(iv)** improper joinder; and
>   **(v)** failure to state an offense;
> **(C)** suppression of evidence;
> **(D)** severance of charges or defendants under Rule 14; and
> **(E)** discovery under Rule 16.

Unless otherwise set by the court, the deadline to file motions under Rule 12(b)(3) is the start of trial. Fed. R. Crim. P. 12(c)(1), (c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."); see United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011). A party's failure "to [timely] file a pretrial motion by the deadline" constitutes a waiver of that issue. Trancheff, 633 F.3d at 697. Although a court has the discretion to excuse a

6

waiver and review an untimely filed pretrial motion, id., the party seeking the court's review must show good cause, meaning they "must show both cause and prejudice." United States v. Mayer, 63 F.4th 680, 683 (8th Cir. 2023) (citation omitted). Thus, absent good cause shown, Defendant may not raise or argue a defense, objection, or request enumerated under Rule 12(b)(3) if not timely filed with this Court pretrial.

Additionally, although not explicitly listed under Rule 12(b)(3), a defendant's argument that law enforcement engaged in "outrageous government conduct"[1] is a question of law and therefore must be "raised as a pre-trial motion to dismiss the indictment." United States v. Nguyen, 250 F.3d 643, 645–46 (8th Cir. 2001) (stating that the failure to file a pre-trial motion to dismiss the indictment based on outrageous government conduct "waives the issue") (citing United States v. Henderson-Durand, 985 F.2d 970, 973 n.4 (8th Cir. 1993)); see also United States v. Duncan, 896 F.2d 271, 274–75 (7th Cir. 1990) (agreeing "with the Second Circuit that an outrageous governmental conduct defense must be made the subject of a pre-trial motion"(citing United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2nd Cir. 1980)).

The United States argues that any defense related to outrageous government conduct should be resolved pretrial, not in front of a jury. Such a ruling, however, would conflict with this Court's prior Order. See Doc. 215. Defendant Eagle Feather Floyd filed a pretrial motion alleging outrageous government conduct and seeking dismissal of the Indictment. Doc. 177. "Pretrial motions should be ruled on unless there is 'good cause to defer a ruling.'" United States v. Turner,

---

[1] Outrageous governmental conduct refers to "conduct of law enforcement agents [that] is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–32 (1973). The United States Court of Appeals for the Eighth Circuit has stated that "[t]he level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting United States v. Pardue, 983 F.2d 835, 847 (8th Cir. 1993)).

842 F.3d 602, 605 (8th Cir. 2016); Fed. R. Crim. P. 12(d). "Good cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact." Turner, 842 F.3d at 605 (cleaned up and citation omitted). This Court "denied [Defendant's motion] without prejudice to her making a motion for judgment of acquittal at trial" because it "raise[d] factual issues that [were] inevitably intertwined with the charged offenses and unsuitable for pretrial adjudication." Doc. 215 at 4; see Turner, 842 F.3d at 605 ("Courts may not . . . make factual findings when an issue is 'inevitably bound up with evidence about the alleged offense itself.'" (citation omitted)).

That said whether law enforcement engaged in outrageous government conduct is still a question of law, not fact. Nguyen, 250 F.3d at 645–46. Therefore, Defendant shall reserve any argument regarding "outrageous government conduct" for a motion for judgment of acquittal, Fed. R. Crim. P. 29; Defendant shall further refrain from making any such argument in the presence of the jury so there is no increased risk of confusing the issues or misleading the jury. See generally Fed. R. Evid. 403.

### 6. Admissibility of Co-Conspirators' Statements

As to subpart six, the United States informs the Court that it will be seeking to admit out-of-court statements made by Defendant's alleged coconspirators. Doc. 260 at 6. The United States does not specify which statements they seek to admit, nor do they seek the admission of any specific statement. Id. Rather, the United States notes that proper foundation will be laid throughout trial to support the admissibility of such statements. Id.

Generally, any oral, written, or non-verbal assertion not made while testifying at the current trial and that is offered to prove the truth of the matter asserted is inadmissible as hearsay. Fed. R. Evid. 801(a)–(c). But certain types of statements are not hearsay. See Fed. R. Evid. 801(d). One

such type is statements made by a defendant's coconspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). For a coconspirator's out-of-court declarations to be admissible against a defendant, the United States must show by a preponderance of evidence "(1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the declaration was made during the course and in furtherance of the conspiracy."[2] United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978). In assessing a statement's admissibility, a court must consider the statement itself, but the statement "does not by itself establish . . . the existence of a conspiracy or participation in it." Fed. R. Evid. 801(d)(2).

This Court reserves ruling on the admissibility of each coconspirator's statement or statements until such time that the United States has presented sufficient foundation.

### 7. Sequestration of Witnesses

Subpart seven of the United States' Motion in Limine seeks an order sequestering all witnesses, except for one investigator or case agent for both the United States and Defendant. "The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and aid in the detection of dishonesty." United States v. Engelmann, 701 F.3d 874, 877 (8th Cir. 2012) (citation omitted). "At a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615; see Engelmann, 701 F.3d at 877. Generally, a "district court is granted wide latitude in implementing sequestration orders." Engelmann, 701 F.3d at 877 (citation omitted). And "the decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout

---

[2] "[I]t is well established that the crime of conspiracy need not be charged in order to invoke the conspirator exception. The rule may more properly be thought of as a 'joint venture' or a 'concert of action' exception." United States v. Miller, 644 F.2d 1241, 1244 n.5 (8th Cir. 1981) (internal citations omitted). Here, Defendant faces a charge in the Superseding Indictment, Doc. 176, for Conspiracy to Distribute a Controlled Substance.

the trial is left to the trial court's discretion." Id. (cleaned up and citation omitted).  Therefore, all witnesses—whether for the United States or Defendant—will be sequestered, except for the case agent for the United States, FBI Special Agent Adam Buiter, and unless they are released from subpoena by both parties.

### 8. Certain Matters Relating to Former Rosebud Sioux Tribe Officer and Former BIA Agent Ben Estes

The United States seeks to preclude Defendant, standby counsel, and any witnesses from referring to two matters from Agent Ben Estes's past: (1) a 2011 matter in which Agent Estes was accused of domestic violence and unauthorized release of confidential information, and (2) a 2022 incident involving allegations of "any criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct prejudicial to the Government" and "discourteous, disrespectful conduct toward members of the public, coworkers, or supervisors," both of which were sustained.  Doc. 266.  Defendant did not object to granting the United States' Motion in Limine as to subpart eight. Additionally, this Court finds that the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice, confusing the issues, undue delay, and wasting time. Fed. R. Evid. 403.  Therefore, subpart eight of the United States' motion is granted.  Based on a discussion at the pretrial conference and motion hearing, Estes's allegedly abusive relationships with women other than Defendant should not be mentioned unless and until this Court rules otherwise.

### 9. Certain Matters Relating to Former Rosebud Sioux Tribe Officer Joshua Marti

The United States also seeks to preclude Defendant, standby counsel, and any witnesses from referring to two incidents relating to Officer Marti: (1) a 2017 incident where Officer Marti

was dismissed from Cheyenne River Sioux Tribe's law enforcement team for the "violation of rules, conduct unbecoming an employee, unsatisfactory performance, and code of conduct violations, Doc. 266; and (2) a November 2023 physical altercation between Officer Marti and his then girlfriend's ex-husband, Doc. 321.  Defendant did not object to granting the United States' Motion in Limine as to subpart nine.  Additionally, this Court finds that the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice, confusing the issues, undue delay, and wasting time.  Fed. R. Evid. 403.  Therefore, subpart nine of the United States' motion is granted.

## IV.    Conclusion

Therefore, for good cause, it is hereby

ORDERED that the United States' Motion in Limine, Doc. 260, is granted to the extent stated herein.

DATED this 26th day of March, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

11